J-A15009-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ALEXANDER A. SUREN, | |
| Appellant | No. 3069 EDA 2018 |

Appeal from the Judgment of Sentence Entered September 12, 2018
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0010602-2016

BEFORE: BENDER, P.J.E., GANTMAN, P.J.E., and COLINS, J.[*]

MEMORANDUM BY BENDER, P.J.E.: **FILED SEPTEMBER 16, 2019**

Appellant, Alexander A. Suren, appeals from the judgment of sentence of 1½ to 3 years' incarceration, followed by 3 years' probation, imposed after a jury convicted him of unlawful contact with a minor (18 Pa.C.S. § 6318(a)(1)), sexual assault (18 Pa.C.S. § 3124.1), and indecent assault by forcible compulsion (18 Pa.C.S. § 3126(a)(2)).[1, 2] Appellant challenges the

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Due to the nature of Appellant's offenses against the minor victim in this case, we grant the Commonwealth's "Application to Seal the Certified Record" pursuant to 42 Pa.C.S. § 6308. Hereinafter, the record in this case shall be sealed from public inspection.

[2] Appellant purported to appeal from the October 3, 2018 order denying his timely-filed, post-sentence motion. "In a criminal action, [the] appeal properly lies from the judgment of sentence made final by the denial of post-sentence motions." **Commonwealth v. Shamberger**, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (citation omitted). We have corrected the caption accordingly.

sufficiency of the evidence to sustain his convictions, as well as the trial court's decision not to allow testimony regarding the victim's reputation for untruthfulness. After careful review, we vacate Appellant's judgment of sentence and remand for a new trial.

Appellant was charged with the above-stated offenses, as well as rape, 18 Pa.C.S. § 3121. In May of 2017, a jury trial was held. The trial court summarizes the evidence presented at that trial, as follows:

Appellant and [the victim, M.F.,] were among a neighborhood group of friends and siblings. On November 12, 2015, Appellant sent [M.F.] a [Snapchat] message telling her to come hang out with him at the house on Lamonte Street where he was living. [M.F.] had been to the house before. [M.F.] entered the house and went to the basement where Appellant was. They then went to Appellant's room, where [M.F.] sat on the foot of the bed reading a yearbook, while Appellant was doing something with the TV or picking up clothes.

At some point, Appellant sat at the head of the bed. Appellant started pulling [M.F.] toward him at the head of the bed, then pulled her down to him, hugging her. [M.F.] kept sitting back up, but Appellant kept pulling her back down as she tried to get up. Appellant then started kissing [M.F.'s] lips and neck. As he did this, [M.F.] kept saying no, it isn't right, and turning her head away. She repeated that more than once.

Appellant then pulled [M.F.'s] legs as he pulled her to the edge of the bed. Appellant continued to try to kiss [M.F.] as he attempted to pull her pants off. [M.F.], in turn, kept pulling her pants back up. This cycle of Appellant pulling down [M.F.'s] pants and [M.F.] pulling them back up happened at least three or four times.

At some point Appellant was able to remove [M.F.'s] pants, as she kept saying no and that it wasn't right. Appellant then stood in front of [M.F.] as she lay on the end of the bed and inserted his penis into her vagina. As he was doing this, [M.F.] continued to say this isn't right. After Appellant ejaculated on her stomach, [M.F.] got her things and left. As she left the house[,]

she was confused and in shock.  She then walked to the bus stop to head to her job.  While at the bus stop[,] [M.F.] called her best friend Morgan to tell her what had happened.  [M.F.] told Morgan that she said no when the incident was happening.  During this call Appellant walked by [M.F.] at the bus stop.  While [M.F.] was at the bus stop, she received a text message [from] Appellant telling her not to tell anybody.

At work[,] [M.F.] was red-faced and crying.  This caused her supervisor, Terry Sheriff, to inquire.  At which point[,] [M.F.] told Ms. Sheriff she had been raped.  Ms. Sheriff then called [M.F.'s] mom to come to their place of work.

When [M.F.'s] mother arrived, she spoke to Ms. Sheriff, then [M.F.'s] mother drove her to Chestnut Hill hospital.  [M.F.] told her mother that she was raped by Appellant. The police were called to the scene and [M.F.] was transferred to St. Christopher's hospital, where she underwent a sexual assault examination. [M.F.] was subsequently interviewed on December 7, 2015.

Trial Court Opinion (TCO), 12/11/18, at 2-4 (footnote and citations to the record omitted).

Appellant testified at trial that before the incident on November 12, 2015, M.F. had "becom[e] really flirtatious with him" and he had spoken to her nearly every day that summer and early fall.  N.T. Trial, 5/9/19, at 21, 22, 23.  He claimed that on one occasion, M.F. had sent him a provocative picture.  *Id.* at 26.  On November 12, 2015, Appellant invited M.F. to his home.  *Id.* at 24.  He testified that M.F. came into his bedroom and sat at the end of his bed.  *Id.* at 28.  M.F. then lay down on the bed and Appellant kissed her, after which M.F. "kissed him back…."  *Id.* at 29.  Appellant stated that he "started … caressing her, like rubbing on her butt and her body and her breast. And then she … pull[ed him] tighter and tighter and then eventually [he] pulled

her pants down." *Id.* at 30. Appellant testified that M.F. was not saying no, and she said nothing when he took her pants off. *Id.* at 30, 31.

Appellant then penetrated M.F.'s vagina with his penis, during which M.F. "said that [they] shouldn't be doing this." *Id.* at 32. He assumed that M.F. meant that, because he was her older brother's friend, they should not be having sex. *Id.* at 33. Appellant claimed that he "kind of sat up and just paused, stopped and [he] asked her if she wanted [him] to stop and she didn't respond. So [he] kissed her again and she pulled [him] tighter once again…." *Id.* at 32. Appellant "then continued to have intercourse with her because [he] assumed through her actions that that was something that was okay." *Id.* at 33. After they had intercourse and M.F. left, Appellant "messaged [her] on Snapchat and told her that that wasn't something [they] could do again and asked her to please not tell anyone because [he] didn't want her older brother to find out." *Id.* at 35.

At the close of Appellant's trial, the jury acquitted him of rape, but convicted him of unlawful contact with a minor, sexual assault, and indecent assault by forcible compulsion. On September 12, 2018, the court sentenced Appellant to an aggregate term of 1½ to 3 years' incarceration, and a consecutive term of 3 years' probation. He filed a timely post-sentence motion, which was denied. Appellant then filed a timely notice of appeal, and he also complied with the court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The court filed its responsive Rule 1925(a) opinion on December 11, 2018.

- 4 -

Herein, Appellant presents two issues for our review:

1. Was the evidence sufficient to prove beyond a reasonable doubt that … Appellant was guilty of [u]nlawful [c]ontact with a [m]inor, [s]exual [a]ssault and [i]ndecent [a]ssault by [f]orcible [c]omplusion where the Commonwealth did not prove that … Appellant committed said acts by force or threat of force and that the complainant did not consent to this conduct?

2. Did the trial judge abuse its discretion in refusing to allow the defense to present evidence that [M.F.] had a bad reputation for truthfulness?

Appellant's Brief at 3.

Appellant first challenges the sufficiency of the evidence to support his convictions.

In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. *Commonwealth v. Moreno*, 14 A.3d 133 (Pa. Super. 2011). Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. *Commonwealth v. Hartzell*, 988 A.2d 141 (Pa. Super. 2009). The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt. *Moreno, supra* at 136.

*Commonwealth v. Koch*, 39 A.3d 996, 1001 (Pa. Super. 2011).

We first address Appellant's claim that the Commonwealth failed to prove he committed sexual assault.

The Crimes Code defines this offense in pertinent part as follows: "A person commits a felony of the second degree when that person engages in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent." 18 Pa.C.S. § 3124.1. Resistance to the sexual assault is not a requisite for sustaining a conviction for sexual assault.

- 5 -

***Commonwealth v. Gonzalez***, 109 A.3d 711, 723 (Pa. Super. 2015) (internal citation omitted).

Appellant contends that the Commonwealth failed to prove that M.F. did not consent to having sexual intercourse with him. We disagree. It is well-settled that "[i]n the case of sexual offenses, the testimony of the victim alone is sufficient to convict … if the fact finder believes the victim." ***Commonwealth v. Jette***, 818 A.2d 533, 534 (Pa. Super. 2003) (citation omitted). Here, M.F. testified that when Appellant began kissing her lips and neck, she repeatedly said, "no, it wasn't right." N.T. Trial, 5/8/18, at 19. She also "kept turning away" when Appellant was trying to kiss her lips. ***Id.*** at 43. Nevertheless, Appellant pulled M.F. by her legs to the edge of the bed and "started to try and pull [her] pants off, and [she] kept pulling them back up." ***Id.*** at 20. Appellant pulled M.F.'s pants down, and she pulled them back up, "three or four times." ***Id.*** at 21. M.F. testified that Appellant "end[ed] up pulling [her] pants off, and [she] kept telling him it wasn't right. And [she] kept saying no." ***Id.*** at 21-22. Appellant then penetrated M.F.'s vagina with his penis, despite that M.F. was "[s]till saying this isn't right." ***Id.*** at 23. M.F.'s testimony was sufficient to prove that she did not consent to sexual intercourse with Appellant. ***See Commonwealth v. Cramer***, 195 A.3d 594, 602 (Pa. Super. 2018) (concluding that the evidence demonstrated the victim did not consent to sexual acts with the appellant where she told him "she was not on the pill" and that she "did not want to do this," and the appellant penetrated her from behind "and later put his hand on her head to encourage

her to perform oral sex"); ***Commonwealth v. Izurieta***, 171 A.3d 803, 807 (Pa. Super. 2017) (finding the evidence sufficient to prove that the victim did not consent to sexual contact where she "pushed [the defendant] away and told him, 'I can't do this anymore.'").

We also deem M.F.'s testimony sufficient to support Appellant's conviction of indecent assault by forcible compulsion. That offense is defined as follows:

> **(a) Offense defined.--**A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and:
>
> ***
>
> (2) the person does so by forcible compulsion;

18 Pa.C.S. § 3126(a)(2).

> The Crimes Code defines "forcible compulsion" as:
>
> Compulsion by use of physical, intellectual, moral, emotional or psychological force, either express or implied. The term includes, but is not limited to, compulsion resulting in another person's death, whether the death occurred before, during or after sexual intercourse.

18 Pa.C.S. § 3101. Additionally,

> [t]his Court has observed "forcible compulsion" as the exercise of sheer physical force or violence and has also come to mean an act of using superior force, physical, moral, psychological or intellectual to compel a person to do a thing against that person's volition and/or will. ***Commonwealth v. Ables***, … 590 A.2d 334, 337 ([Pa. Super.] 1991). A determination of forcible compulsion

rests on the totality of the circumstances, including but not limited to this list of factors:

> the respective ages of the victim and the accused, the respective mental and physical conditions of the victim and the accused, the atmosphere and physical setting in which the incident was alleged to have taken place, the extent to which the accused may have been in a position of authority, domination or custodial control over the victim, and whether the victim was under duress.
>
> *Commonwealth v. Rhodes*, … 510 A.2d 1217, 1226 ([Pa.] 1986)…. It is not mandatory to show that the victim resisted the assault in order to prove forcible compulsion. *Id.*

*Commonwealth v. Gonzalez*, 109 A.3d 711, 720-21 (Pa. Super. 2015).

We recognize that "'[f]orcible compulsion' means 'something more' than mere lack of consent." *Id.* (citation omitted). "Where there is a lack of consent, but no showing of either physical force, a threat of physical force, or psychological coercion, the 'forcible compulsion' requirement ... is not met." *Id.*

Again, the testimony of M.F. was adequate to demonstrate that Appellant used physical force to overcome her lack of consent. Namely, M.F. claimed that Appellant tried to kiss her lips despite that she turned her face away from his; he pulled her by her legs to the edge of the bed; he attempted to remove her pants at least three times, despite that M.F. kept pulling them back up; and he ultimately removed her pants and penetrated her vagina with his penis while he stood over her as she lay on the bed. M.F.'s testimony was sufficient to prove that Appellant committed indecent assault by forcible compulsion.

Lastly, while Appellant purports to challenge his conviction for unlawful contact with a minor, he offers no specific discussion about this offense. Because we conclude that the evidence supports Appellant's sexual assault and indecent assault convictions, we likewise conclude that the evidence sustains his conviction for unlawful contact with a minor. *See* 18 Pa.C.S. § 6318(a)(1) ("A person commits an offense if he is intentionally in contact with a minor … for the purpose of engaging in … (1) [a]ny of the offenses enumerated in Chapter 31 (relating to sexual offenses).").

In Appellant's second issue on appeal, he argues that he is entitled to a new trial because the court erroneously precluded him from presenting testimony that M.F. had a reputation for untruthfulness. Appellant explains the context of this issue, as follows:

> At trial, … M.F.[] testified that … Appellant insisted on pursuing sexual contact with her even though, she claims, she said "no" repeatedly[.] (N.T.[,] 5/8/18, [at] 18-22).
>
> … Appellant testified that during their sexual encounter, [M.F.] said nothing other than, "we shouldn't be doing this[.]" (N.T.[,] 5/9/18, [at] 29, 32, 52). … Appellant testified that he believed that [M.F.] wanted to have sex with him[.] ([*Id.* at] 50-51).
>
> Accordingly, the truthfulness of the testimony of [M.F.] versus that of … Appellant was crucial in deciding the issue of Appellant's guilt at trial.
>
> While … Appellant was able to present witnesses to testify that he had a good reputation for the traits of peaceful and law abiding behavior and truthfulness ([*Id.* at] 7, 10[-11], 63), defense counsel's effort to present testimony that [M.F.] did not have a good reputation for truthfulness was rejected by the trial [court].

At the conference on the trial [court's] instruction to the jury, defense counsel informed the [c]ourt that she wanted [it] to instruct the jury regarding the "bad reputation of the witness, 4.08B[.]" (N.T.[,] 5/9/18, [at] 4). [The trial court] deferred judgment on that issue.

After … Appellant's testimony was concluded, … defense counsel and the [c]ourt engaged in the following exchange outside the presence of the jury:

THE COURT: Ladies and gentlemen, please excuse us for four minutes.

THE COURT OFFICER: Please remain seated as the jury exits the courtroom.

([T]he jury exits the courtroom at 10:43 a.m.)

THE COURT: All right. [Defense counsel,] you had one more witness in mind?

[Defense Counsel]: Yes.

THE COURT: During the testimony, I was reviewing the Rules of Evidence, 405 and 608, pursuant to which that request is denied.

[Defense Counsel]: May I just put on the record what it was that we talked about in the back?

THE COURT: Oh, yes, absolutely.

[Defense Counsel]: Your Honor, by way of proffer, Ms. Barbara Littel is here, L-I-T-T-E-L. She is here to offer testimony. She can offer both good and bad character evidence for [Appellant]. She can also offer bad reputation for truthfulness, character evidence regarding [M.F.], and she would offer, if solicited, also good character evidence for [M.F.] for peacefulness and law-abiding. My request at the charging conference was to read the bad reputation witness evidence. Thank you.

THE COURT: Let me modify my ruling because I forgot about the first part. She may offer reputation evidence of [Appellant's] character for being truthful, honest, and law-abiding, but not the rest of it. So if you want to call her for [Appellant's] character, you may.

- 10 -

[Defense Counsel]: I would like to.  Thank you.

THE COURT: All right.

(N.T.[,] 5/9/18, [at] 58-59).

Appellant's Brief at 20-21.

Appellant now claims that the trial court abused its discretion by precluding Ms. Littel from testifying about M.F.'s reputation for untruthfulness.[3]  He contends that this testimony was admissible under Pennsylvania Rule of Evidence 608, which states, in pertinent part, that "[a] witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness." Pa.R.E. 608(a).  Appellant stresses that because "the credibility of [M.F.] was essential to the Commonwealth's argument that … Appellant should be

_____

[3] The Commonwealth unconvincingly argues that "[t]his claim is waived because [Appellant] failed to make a timely objection to the court's ruling." Commonwealth's Brief at 12-13.  Defense counsel raised the present claim before the trial court by asking for the Ms. Littel's testimony to be admitted. Counsel not only made this request during an off-the-record conference with the court, but she also appropriately renewed her request when the proceeding was back on the record.  These circumstances make this case distinguishable from the cases on which the Commonwealth relies.  For instance, in *Commonwealth v. Brown*, 701 A.2d 252, 254 (Pa. Super. 1997), we found the appellant had waived his challenge to "testimony that was given and admitted as evidence without objection from [the a]ppellant." We stressed that "[t]he Superior Court will not consider a claim on appeal which was not called to the trial court's attention at a time when any error committed could have been corrected."  *Id.*  Unlike the unobjected-to evidence admitted in *Brown*, here, defense counsel requested the admission of Ms. Littel's testimony regarding M.F.'s reputation for dishonesty both on and off the record.  Thus, Appellant sufficiently raised before the trial court the issue of the admissibility of Ms. Littel's testimony, thus preserving it for our review.

convicted[,]" the court abused its discretion by not permitting him to present Ms. Littel's testimony regarding M.F.'s reputation for dishonesty.

Initially, we recognize:

The standard of review employed when faced with a challenge to the trial court's decision as to whether or not to admit evidence is well settled. Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and a reviewing court will not reverse the trial court's decision absent a clear abuse of discretion. *Commonwealth v. Hunzer*, 868 A.2d 498 (Pa. Super. 2005). Abuse of discretion is not merely an error of judgment, but rather where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will. *Id.*

*Commonwealth v. Young*, 989 A.2d 920, 924 (Pa. Super. 2010) (citation omitted).

Here, after carefully considering the record before us, we must conclude that the trial court abused its discretion by not admitting Ms. Littel's testimony about M.F.'s reputation for untruthfulness. Under Rule 608(a), such testimony is admissible, and the court offered no reason at trial for its decision to preclude it. Moreover, in its Rule 1925(a) opinion, the court simply states:

At no point was there a proffer of the content of Ms. Little's [*sic*] testimony regarding [M.F.'s] alleged reputation for untruthfulness. Faced with this void, the [c]ourt was within its sound discretion to preclude such testimony.

TCO at 9. However, the court allowed Ms. Littel's testimony regarding Appellant's reputation based only on defense counsel's proffer that she would "offer both good and bad character evidence for [Appellant]." N.T. Trial, 5/9/18, at 58. We fail to see — and the court does not explain — why the

- 12 -

proffer regarding Ms. Littel's testimony about Appellant's reputation was sufficient, but the proffer pertaining to her testimony about M.F.'s reputation was not.[4]  Nothing in the record before us justifies this apparent inconsistency in the court's ruling.

Moreover, we disagree with the Commonwealth that "any error would have been harmless."  Commonwealth's Brief at 15.[5]  According to the Commonwealth, Appellant was not prejudiced by the preclusion of Ms. Littel's testimony because he presented several witnesses who testified about his reputation for truthfulness, while no witness testified that M.F. is known for being honest.

However, Ms. Littel's testifying that M.F. has a reputation for *dishonesty* would have been much more compelling than the mere *absence* of testimony that M.F. is honest.  Indeed, testimony that M.F. is known for her *untruthfulness*, in combination with the evidence of Appellant's reputation for

---

[4] This is especially troubling where the Commonwealth admits that "the collateral evidence of [Appellant's] truthful reputation was inadmissible" because, while "the prosecutor challenged [Appellant's] versions of events on cross-examination, … she did not allege that he had an untruthful character." Commonwealth's Brief at 17; **see also** Pa.R.E. 608(a) ("[E]vidence of truthful character is admissible only after the witness's character for truthfulness has been attacked.").  Thus, the trial court permitted Appellant to introduce Ms. Littel's *inadmissible* testimony about his reputation for truthfulness based on a meager proffer, yet precluded her *admissible* testimony about M.F.'s reputation for untruthfulness on the basis that a nearly identical proffer was inadequate.

[5] Notably, the Commonwealth proceeds straight from its waiver argument to a harmless error analysis, offering no discussion of whether the trial court erred by precluding Ms. Littel's testimony.

*honesty*, may very well have changed the outcome of this case. Accordingly, we cannot say that the court's error in precluding the at-issue evidence "was harmless beyond a reasonable doubt." ***Commonwealth v. Allshouse***, 36 A.3d 163, 182 (Pa. 2012).

Therefore, we conclude that the trial court erred by precluding Ms. Littel's testimony regarding M.F.'s reputation for untruthfulness. Because that error was not harmless, Appellant is entitled to a new trial.

Judgment of sentence vacated. Case remanded for a new trial. Jurisdiction relinquished.

Judge Colins joins this memorandum.

President Judge Emeritus Gantman notes her dissent.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/16/19